[Cite as *Ettayem v. Land of Ararat Invest. Group, Inc.*, 2020-Ohio-3006.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashraf Ettayem, | : | |
| Plaintiff-Appellant, | : | No. 19AP-427 |
| v. | : | (C.P.C. No. 15CV-9869) |
| The Land of Ararat Investment Group,<br>Inc., a/k/a Land of Ararat Investment<br>Group, Inc. et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 19, 2020

**On brief**: *Ashraf Ettayem*, pro se.

**On brief**: *Terry K. Sherman*; *Irving B. Marks*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1}   Ashraf Ettayem, plaintiff-appellant, appeals the judgment of the Franklin County Court of Common Pleas, in which the court adopted the magistrate's decision rendered in favor of Land of Ararat Investment Group ("Land of Ararat") and Tigran Safaryan, defendants-appellees, and overruled the objections to the magistrate's decision filed by appellant.

{¶ 2}   This case is before this court after a remand emanating from our decision in *Ettayem v. Land of Ararat Invest. Group, Inc.*, 10th Dist. No. 17AP-93, 2017-Ohio-8835, and we borrow liberally from that case the following background facts that are pertinent to the current appeal. Land of Ararat is a corporation whose sole asset is a shopping

center, Southfield Center, purchased in 2004 and located in Franklin County. Safaryan is the sole shareholder of Land of Ararat. Appellant is a former minority 20 percent shareholder in Land of Ararat. Appellant is also the sole shareholder in EMA Group Corporation ("EMA"), which operated at various times, beginning in 2007, a retail business known as "Shop N Save" in the Southfield Center.

{¶ 3} On May 20, 2009, Safaryan signed a land lease agreement to lease a portion of the shopping center for five years to a cell phone tower operator ("Verizon") for $700 per month. On January 8, 2010, Verizon executed the lease. The lease of the property to the cell phone tower operator is at the core of the current appeal.

{¶ 4} In December 2009, the parties began discussing Safaryan's purchase of appellant's 20 percent interest in Land of Ararat, although they disagree on who initiated the discussions. After EMA closed the Shop N Save, the parties negotiated two transactions under which: (1) appellant would sell his 20 percent stake in Land of Ararat to Safaryan, and (2) EMA and Land of Ararat would enter into a commercial lease with the intention of re-opening the Shop N Save store. The transaction closed on January 7, 2010 with a stated price of $95,000. At the remand trial, appellant claimed that, at the time he sold his stock to Safaryan, he was unaware of the possibility of Verizon's lease for a cell phone tower until construction of the cell phone tower began. Safaryan testified he told appellant about the possibility of Verizon's lease for the cell phone tower and the monthly lease rate prior to appellant's sale of his minority share.

{¶ 5} Contemporaneously with the sale of appellant's shares, EMA and Land of Ararat entered into a five-year lease of approximately 7,000-7,500 square feet in the Southfield Center. EMA's Shop N Save briefly re-opened at the leased location and then closed again amid a dispute over the condition of the premises.

{¶ 6} On December 10, 2013, EMA and appellant filed a complaint in which they alleged claims for breach of lease contract, conversion of store equipment, breach of fiduciary duty, fraud, and punitive damages. The first two claims were by EMA and arose out of the lease agreement, while the third and fourth claims were by appellant personally and arose out of appellant's sale of his minority interest in Land of Ararat. The fifth claim for punitive damages was derivative of the four substantive claims. Eventually, EMA and appellant voluntarily dismissed their causes of action without prejudice.

{¶ 7} On October 30, 2015, appellant refiled a pro se complaint restating the same five claims. EMA was not a named plaintiff, and appellant asserted all claims on his own behalf. The parties engaged in discovery and, on July 26, 2016, the trial court granted appellant's July 22, 2016 motion to extend discovery, extending discovery until October 26, 2016.

{¶ 8} On August 29, 2016, appellees filed a motion to dismiss with regard to several claims. On October 11, 2016, appellees filed a motion for summary judgment. On October 19, 2016, appellant again filed a motion to extend the discovery cutoff which the trial court denied. On January 5, 2017, the trial court granted both of appellees' motions. The court found that the claims for breach of the lease and conversion of store equipment failed because appellant, acting pro se, could not file claims on behalf of the corporate entity EMA, and they were also time-barred because he had refiled them more than one year after the initial dismissal on October 29, 2014. The court further found with respect to the claim for breach of fiduciary duty that appellant had submitted no evidence to demonstrate a genuine issue of material fact regarding any breach by Safaryan of the fiduciary duty owed to appellant as a minority shareholder. The court found the claim for fraud was pleaded with insufficient particularity under Civ.R. 9(B), and there was no evidence to support even a sufficiently pled claim for fraud. The court then granted judgment on the fifth cause of action for punitive damages, which was derivative of the first four claims.

{¶ 9} Appellant appealed the judgment. In *Ettayem*, we affirmed the trial court's ruling with regard to the breach of contract and conversion claims relating to the concealment of rent and diversion of funds. However, we found the trial court erred when it granted summary judgment in favor of appellees on the breach of fiduciary duty, fraud, and punitive damages claims only with regard to the allegation that appellees concealed from appellant the possibility of a new cell phone tower lease. We remanded the matter to the trial court to conduct proceedings solely with regard to the cell phone tower.

{¶ 10} On June 25, 2018, appellant filed a motion to compel appellees to supplement his previous discovery request. On July 22, 2018, the trial court denied appellant's motion to compel.

{¶ 11} Commencing July 23, 2018, a bench trial was held before the magistrate. On March 5, 2019, the magistrate issued a decision in which she found: (1) Safaryan informed appellant of the possibility that Verizon would be paying Land of Ararat $700 per month for a cell phone tower lease prior to Safaryan's purchase of appellant's stock; thus, appellant failed to meet his burden of proof for his breach of fiduciary duty claim, (2) because Safaryan informed appellant of the possibility of the Verizon lease before appellant sold Safaryan his stock; appellant failed to meet his burden of proof that Safaryan concealed a fact with the intent of misleading appellant into relying upon it and, therefore, appellant failed to meet his burden of proof for his fraud claim, and (3) although the magistrate prematurely granted appellees' motion to dismiss appellant's claims for punitive damages at the close of appellant's case prior to first making a determination with respect to compensatory damages, given the subsequent findings that appellant failed to meet his burden of proof on both his breach of fiduciary duty and fraud claims, which are the basis for his punitive damages claim, appellant is not entitled to compensatory or punitive damages.

{¶ 12} Appellant filed objections to the magistrate's decision. On June 6, 2019, the trial court entered judgment in which it adopted the magistrate's decision and overruled appellant's objections. Appellant appeals the judgment of the trial court, asserting the following two assignments of error:

> [I.] THE TRIAL COURT ERRED IN ADOPTING MAGISTRATE'S DECISION AND OVERRULING PLAINTIFF'S OBJECTION[.]
>
> [II.] THE TRIAL COURT ERRED DENYING PLAINTIFF'S MOTION TO COMPEL[.]

{¶ 13} Appellant argues in his first assignment of error the trial court erred when it adopted the magistrate's decision and overruled his objections. Upon remand, the trial court was tasked with determining whether Safaryan breached his fiduciary duty to or committed fraud against appellant by failing to disclose to appellant the potential cell phone tower lease, and, if so, whether appellant was entitled to punitive damages.

{¶ 14} We detailed the law related to a breach of fiduciary duty in business dealings in *Ettayem*:

"A party in a business transaction with another with whom he is in a fiduciary relationship must fully disclose material facts known to him but not to the other. *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 101, 519 N.E.2d 363." *Binsack v. Hipp*, 6th Dist. No. H-97-029, 1998 Ohio App. LEXIS 2370 (June 5, 1998). To prove such a claim for breach of fiduciary duty under Ohio law, the following elements must be established: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. *Saxe v. Dlusky*, 10th Dist. No. 09AP-673, 2010-Ohio-5323, ¶ 23, citing *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 36, 935 N.E.2d 70.

The majority shareholders in a closely-held corporation have a fiduciary duty to minority shareholders. *Crosby v. Beam*, 47 Ohio St.3d 105, 108, 548 N.E.2d 217 (1989), citing *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal. Rptr. 592, 460 P.2d 464 (1969). "Courts in sister states and Ohio appellate courts have found a heighted fiduciary duty between majority and minority shareholders in a close corporation. This duty is similar to the duty that partners owe one another in a partnership because of the fundamental resemblance between the close corporation and a partnership." *Id.*, citing *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 588-89, 328 N.E.2d 505 (1975). The standard is one of utmost good faith and loyalty. *Id.* Control of the stock in a closed corporation cannot be used to give the majority benefits which are not shared by the minority. *Id.* at 109. Such a breach is actionable by the minority shareholders who are individually harmed. *Id.*; *Franks v. Rankin*, 10th Dist. No. 11AP-962, 2012-Ohio-1920, ¶ 34.

*Ettayem* at ¶ 33-34.

{¶ 15} In *Ettayem*, we also discussed the law in Ohio as it pertains to a fraud claim:

The elements of a fraud claim are as follows: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance by the injured party upon the representation or concealment, and (6) resulting injury proximately caused by the reliance. *Burr v. Bd. of Cty. Commrs.*, 23 Ohio St.3d 69,

23 Ohio B. 200, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

In Ohio, fraud cannot be predicated on promises or representations relating to future action or conduct. *Brevoort v. Internatl. Fin. Resources, Inc.*, 10th Dist. No. 93AP-977, 1993 Ohio App. LEXIS 6449 (Dec. 30, 1993). To constitute actionable fraud, the misrepresentation must be of a fact existing when the misrepresentation was made or one that previously existed. *Gouge v. BAX Global, Inc.*, 252 F.Supp.2d 509, 515 (N.D.Ohio 2003), citing *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App.3d 513, 525, 2002-Ohio-5194, 778 N.E.2d 80 (7th Dist.), citing *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742, 607 N.E.2d 1140 (8th Dist.1992). Generally, a representation concerning a future event will not support a fraud claim, because such a representation is more in the nature of a prediction or opinion about what the future may bring. Id. However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future. *Adams v. Margarum*, 10th Dist. No. 16AP-515, 2017-Ohio-2741, ¶ 15.

*Ettayem* at ¶ 42-43.

{¶ 16} As explained above, the magistrate found Safaryan's testimony more credible than appellant's and concluded Safaryan informed appellant of the possibility that Verizon would be paying Land of Ararat $700 per month for a cell phone tower lease before Safaryan purchased appellant's stock. Thus, the magistrate concluded appellant's breach of fiduciary duty and fraud claims must fail. Furthermore, the magistrate found that, given appellant's breach of fiduciary duty and fraud claims failed, and the punitive damages award was dependent upon his success on those claims, appellant was not entitled to compensatory or punitive damages.

{¶ 17} In arguing his current assignment of error, however, appellant does not focus on the basis of the magistrate's decision, which, again, was that Safaryan's testimony was more credible on the issue of whether he informed appellant about the Verizon lease contract. Instead, appellant's argument under his first assignment of error resurrects issues we already addressed in *Ettayem*, such as Safaryan's diversion of funds to his uncle, girlfriend, and other business entities; his misleading statements about appellant's investments; his failure to disclose money distributions; and his concealment of the actual

revenues the business was generating. Appellant also raises arguments regarding Safaryan's testimony that Land of Ararat was unprofitable when the evidence demonstrated the company had retained earnings of over $118,000 in 2009. Appellant does not even mention the Verizon cell phone tower lease anywhere in his first assignment of error.

{¶ 18} Appellant's failure to present any argument on appeal challenging the basis of the trial court's decision, or even address the Verizon lease, compels this court to affirm the trial court's decision. However, even if we could address the merits of the magistrate's decision, appellant would have a daunting challenge to contest the magistrate's credibility determination. An appellate court must give deference to the credibility findings of the trial court because the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Thus, the relative weight to be given witness testimony and the credibility to be afforded each of the witnesses is a question for the trier of fact. *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 36. Here, the magistrate specifically noted he considered the appearance of the witnesses on the stand; their manner of testifying; the reasonableness of their testimony; their opportunity to see, hear, and know the things concerning which they testified; the accuracy of their memory; their frankness; their intelligence; and their bias. The magistrate found that, in applying these factors, especially the considerations of the appearance of appellant and Safaryan on the stand and their relative frankness, Safaryan's testimony was more credible. We have no reason to question the magistrate's credibility determination, and appellant provides none. Therefore, even if we were to address the merits of appellant's argument, we would affirm the trial court's judgment with regard to whether Safaryan breached any fiduciary duty or committed fraud toward appellant on the issue of the Verizon cell phone tower lease. As for the punitive damages claim, because that claim was wholly dependent upon the success of the breach of fiduciary duty and fraud claims, we must also find the trial court did not err when it denied appellant's claim for punitive damages. Therefore, we overrule appellant's first assignment of error.

{¶ 19} Appellant argues in his second assignment of error the trial court erred when it denied his motion to compel discovery. In his motion to compel discovery, appellant sought discovery regarding information and documents requested during Safaryan's and Vicky Akopyan's September 19, 2016 depositions, including information about the person appellees had assigned for administrative duties, the contact person at Verizon, income tax returns and bank statements from 2004-2005, records about the sale of certain real property, copies of cancelled checks, and information about the stock purchase from Safaryan's uncle.

{¶ 20} "A trial court enjoys broad discretion in the regulation of discovery, and an appellate court will not reverse a trial court's decision to sustain or overrule a motion to compel discovery absent an abuse of discretion." *Coryell v. Bank One Trust Co., N.A.*, 10th Dist. No. 07AP-766, 2008-Ohio-2698, ¶ 47, citing *513 East Rich St. Co. v. McGreevy*, 10th Dist. No. 02AP-1207, 2003-Ohio-2487, ¶ 10. "[A]buse of discretion" implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 21} In the present case, we find the trial court did not abuse its discretion when it denied appellant's motion to compel discovery. On October 19, 2016, appellant filed a motion to extend discovery, which sought the exact same information sought in the motion to compel discovery at issue in the current appeal. On November 8, 2016, the trial court denied this motion to extend discovery, finding that: (1) appellant never filed a motion to compel in his previous action, which appellant voluntarily dismissed 30 days after the discovery cutoff; thus, the trial court could presume discovery was appropriately completed in that case, (2) appellant only filed his motion to extend discovery in the present case after appellees filed their motion for summary judgment, (3) appellant waited eight days after appellees' motion for summary judgment was filed to file his motion to extend, and it was filed belatedly only seven days before the discovery cutoff, (4) appellant did not file the motion to extend pursuant to Civ.R. 56(F), and even if he did, he did not include the affidavit required by Civ.R. 56(F) explaining the reasons justifying an extension, and (5) the court had already extended discovery for 60 days. Appellant appealed this denial of his motion to extend discovery, and in *Ettayem* we found the trial court did not err when it denied his motion to extend discovery, finding the following:

The trial court noted that discovery had proceeded through previous extensions, and the refiled case benefitted from proceedings preceding dismissal of the first complaint. To the extent that appellant claimed at the eleventh hour appellees had not provided complete responses to his requests for documents, we note the record does not disclose any indication appellant had previously sought the assistance of the court to obtain timely cooperation from the defendants. Appellant has not particularized the necessary evidence that would have been uncovered by additional discovery time. Because the court's rulings were consistent with the fair and efficient administration of the case, and because appellant fails to articulate specific prejudice from the trial court's discovery ruling, we can find no abuse of discovery on the part of the trial court's oversight of the discovery process.

*Ettayem* at ¶ 16. Appellant filed an application for reconsideration, asking, in pertinent part, that this court revisit the denial of his motion to extend discovery. We denied the application, finding our decision was based on the overall timing and conduct of discovery, his limited articulation of how the sought-after evidence would apply to his claims, and his failure to pursue procedural remedies. Appellant filed his current motion to compel discovery in the trial court soon after our denial of his application for reconsideration.

{¶ 22} Although appellant currently seeks discovery under the heading of a motion to compel, he seeks the exact same discovery he sought in his prior motion to extend discovery. The trial court has previously denied this same discovery once, and this court has denied it twice. The trial court then denied his current attempt to obtain this same discovery. Appellant is now before us seeking a fifth bite of the same apple. Appellant presents no new reasons for allowing his belated attempt at discovery. For these reasons, we find the trial court did not abuse its discretion when it denied appellant's motion to compel discovery. Appellant's second assignment of error is overruled.

{¶ 23} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.

_____